United States Court of Appeals,

Fifth Circuit.

No. 90–3183.

Mr. & Mrs. Henry PLAISANCE, Jr., Plaintiffs–Appellants,

v.

TEXACO, INC. et al., Defendants–Appellees.

July 14, 1992.

Appeal from the United States District Court For the Eastern District of Louisiana.

Before POLITZ, Chief Judge, WILLIAMS, KING, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Henry A. Plaisance, Jr. and his wife appeal the dismissal of their action under the Jones Act and general maritime law to recover for emotional injuries unaccompanied by any physical injury. A panel of this court held that the Jones Act allows recovery for purely emotional injuries but affirmed the dismissal of the Plaisances' claim. Upon rehearing en banc, we affirm dismissal of the suit but hold that the facts of this case make it unnecessary for us to decide whether the Jones Act permits recovery for purely emotional injuries.

I.

In January 1989, Mr. Plaisance, a tugboat captain with over thirty years of experience, was operating the tug TOMMY CROSBY for his employer, Crosby Marine Service, Inc. (Crosby). The tug was chartered to Texaco, Inc. At the time, the TOMMY CROSBY was towing a workover barge from one well site to another in Louisiana coastal waters. A second tug, the VERGIE CENAC, was tied to the stern of the barge. While this flotilla was en route to a new well, one of the barge's spuds, projecting below the waterline, struck an underwater gas pipeline. The pipeline ruptured, causing gas to escape and an explosion and fire to ensue.

Following the explosion, fire broke out on the rear of the barge and the front of the VERGIE CENAC. Mr. Plaisance backed the TOMMY CROSBY to the bow of the barge, and the crews from the barge and the VERGIE CENAC boarded the TOMMY CROSBY to escape the fire. The tow was then disconnected, and Mr. Plaisance moved the TOMMY CROSBY a short distance away from the barge. The tether lines between the barge and the VERGIE CENAC burned, and the VERGIE CENAC drifted away from the rupture site. Upon instructions from a Texaco supervisor, Mr. Plaisance reconnected the tow lines to the barge, pulled it away from the rupture site, and spudded it in place.

The crews from the flotilla and other vessels that had responded to the fire extinguished the fire in less than thirty minutes. Mr. Plaisance did not personally participate in fighting the fire. The explosion did not damage the TOMMY CROSBY, and the fire did not spread to it from the barge or the other tug. Mr. Plaisance was never in danger and, fortunately, no one was injured by the fire.

After the fire was extinguished, the flotilla reformed and proceeded to a nearby Texaco camp. The TOMMY CROSBY then continued on to a Texaco fuel dock in the vicinity to receive a load of diesel fuel for the barge. Once the tug transferred the fuel to the barge, the TOMMY CROSBY towed the barge to a repair dock in Cocodrie, Louisiana. Upon his arrival at the repair dock, Mr. Plaisance told a Texaco representative that he did not feel well and asked to be relieved of duty.

Later that day, Mr. Plaisance went to a local hospital where he was treated for several days. He then transferred to a psychiatric hospital where he received treatment for an extended period of time. According to the treating psychiatrist, Mr. Plaisance was suffering from post-traumatic stress disorder because of his belief that he or someone else could have been killed in the explosion and fire. Mr. Plaisance has continued to receive periodic psychiatric care since his release from the hospital. He contends that he has not been able to return to work.

Mr. Plaisance and his wife later filed this personal injury suit against Crosby under the Jones Act, 46 U.S.C.App. § 688, and general maritime law and against the vessel charterer, Texaco, under the general maritime law. Crosby and Texaco moved for dismissal or summary judgment on all claims on grounds that purely emotional injuries are not cognizable under the Jones Act or general maritime law. The district court granted the motion and dismissed the Plaisances' suit. See *Plaisance v. Texaco, Inc.,* 735 F.Supp. 686 (E.D.La.1990).

On appeal, a panel majority of this court affirmed the district court's dismissal. See *Plaisance v. Texaco, Inc.,* 937 F.2d 1004 (5th Cir.1991). Despite its conclusion, the panel majority adopted the so-called full recovery rule for this circuit for the recovery of emotional injuries. Under this rule, recovery is permitted in a negligence action for infliction of serious emotional distress where "a reasonable person, normally constituted, would not be able to cope adequately with the mental distress occasioned by the circumstances." *Id.* at 1010.

The panel majority concluded, however, that the Plaisances were not entitled to recover because Mr. Plaisance's injury "was not a reasonably foreseeable consequence of the alleged negligence." *Id.* The panel majority reasoned that one would not expect a seaman with Mr. Plaisance's experience to suffer such an emotional reaction when he was not objectively threatened by the fire. We took this case en banc to consider whether its facts were appropriate ones for us to establish a rule for the recovery of purely emotional injuries under the Jones Act.

## II.

## A.

The panel majority fairly describes the various models that have been adopted or proposed by the states for recovery of emotional injuries. These four theories, in decreasing order of difficulty for a plaintiff to establish, are:

(1) physical injury or impact rule:  permitting "recovery for emotional injury provided there is some physical contact;"

(2) zone of danger rule:  providing recovery for emotional injuries absent any physical contact, which result "from the witnessing of peril or harm to another if the plaintiff is also threatened with physical harm as a consequence of the defendant's negligence;"

(3) bystander proximity rule:  permitting "recovery, even if one is not in the zone of danger, provided the complainant:  (1) is physically near the scene of the accident;  (2) personally observes the accident;  and (3) is closely related to the victim;"  and

(4) full recovery rule:  allowing recovery in a negligence action for infliction of serious emotional distress where "a reasonable person, normally constituted, would not be able to cope adequately with the mental distress occasioned by the circumstances."

*Plaisance,* 937 F.2d at 1009–10.

We agree with the panel that Mr. Plaisance's injury was not a reasonably foreseeable consequence of the defendants' negligence.  Thus, under any known theory of recovery—even the most liberal—the Plaisances have failed to establish their claim.  Stated differently, the Plaisances have not presented a prima facie case to recover any damages arising from this incident.  Consequently, we conclude that the facts of today's case do not permit us to decide whether or under what circumstances we might permit recovery of damages for purely emotional injuries.  Other circuit courts have similarly resisted adopting a general rule of recovery for purely emotional injuries in cases where the plaintiff has failed to present a prima facie case.  *See, e.g., Outten v. National R.R. Passenger Corp.,* 928 F.2d 74 (3d Cir.1991);  *Stoklosa v. Consolidated Rail Corp.,* 864 F.2d 425 (6th Cir.1988).

B.

To avoid any possible confusion that our decision to review this case en banc may cause, we emphasize that *Gaston v. Flowers Transp.,* 866 F.2d 816 (5th Cir.1989), continues to represent the law of this circuit.  In *Gaston,* a seaman brought suit under the Jones Act for purely emotional injuries he allegedly suffered when he saw his half-brother crushed to death between two vessels.  A panel of this court affirmed the district court's dismissal of Gaston's action.  The court reasoned that construing the Jones Act to cover a *bystander's* injuries would represent a major departure from the

existing jurisprudence. The court recognized that such a move would require it to allow recovery for injuries resulting not from physical trauma, or the fear of physical trauma, to the plaintiff but from witnessing a "bad sight," i.e., harm to another. *Id.* at 819–20.

The holding in *Gaston* is limited but instructive. The court recognized that a plaintiff suing for purely emotional injuries could recover if he also suffered physical injury. The court also determined that a bystander could not recover for merely witnessing harm to another where the plaintiff suffered no harm or threat of harm. In rejecting bystander recovery, *Gaston* implicitly foreclosed recovery under any less exacting model, such as a full recovery theory. *Gaston* leaves open the question whether a plaintiff may recover for purely emotional injuries under a zone of danger theory.

## III.

For the reasons stated above, we affirm the judgment of the district court.

AFFIRMED.

JERRE S. POLITZ, Chief Judge, with whom WILLIAMS, Circuit Judge, joins, specially concurring:

I join in the judgment of the court. I do not agree with the majority, however, that in the resolution of this case it is "unnecessary for us to decide whether the Jones Act permits recovery for purely emotional injuries," without physical injury or contact. I believe such to be an imperative for that is the entirety of the Plaisance claim. He seeks recovery solely for emotional injuries arising out of an occurrence which happened to him. He claims no physical injury. I would reach and decide whether purely emotional injuries are recoverable under the Jones Act. In doing so I would again conclude, as did the majority of the panel, *Plaisance v. Texaco,* 937 F.2d 1004 (5th Cir.1991), that such an injury may serve as the basis for recovery under the FELA and Jones Act.