# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2019 CA 1185

### ROBERT E. THOMPSON

### VERSUS

### CENAC TOWING CO., L.L.C.

Judgment rendered: **MAR 2 5 2021**

\* \* \* \* \*

On Appeal from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
No. 583487 Div. / Sec. 22

The Honorable Timothy E. Kelley, Judge Presiding

\* \* \* \* \*

Michael C. Hendry
A.M. "Tony" Clayton
Michael P. Frugé
Richard J. Ward, III
Randall B. Gay, Jr.
Brilliant P. Clayton
Jaclyn C. Chapman
Port Allen, Louisiana
and
Robert Wynne
Michael E. Pierce
Ryan M. Grant
Houston, Texas

Attorneys for Plaintiff/Appellant
Robert E. Thompson

Tracy E. Kern
P.J. Kee
Richard Scott Jenkins
New Orleans, Louisiana

Attorneys for Defendant/Appellee
Cenac Towing Co., L.L.C.

\* \* \* \* \*

**BEFORE: McDONALD, McCLENDON, WELCH, HOLDRIDGE, AND CHUTZ, JJ.**

**HOLDRIDGE, J.**

The plaintiff, Robert E. Thompson, appeals the trial court judgment that granted summary judgment in favor of the defendant, Cenac Towing Co., L.L.C., and dismissed the plaintiff's claims with prejudice. For the following reasons, we reverse and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

The plaintiff, an African-American, was employed by the defendant as a tankerman. On October 3, 2008, the plaintiff started a 28-day hitch aboard the M/V Norman Proehl. The plaintiff allegedly noticed a rope that resembled a noose hanging in the tugboat's wheelhouse. The plaintiff did not express any concerns about the noose until October 17, 2008, when he went into the wheelhouse and told the captain that he would report him for the noose. At no time during the verbal confrontation did the captain make any physical contact with the plaintiff. The captain reported the incident to the defendant's personnel coordinator, and the plaintiff was transferred from the M/V Norman Proehl to another vessel the following day.

As a result of the incident, on October 14, 2009, the plaintiff fax-filed a petition seeking damages from the defendant for negligent infliction of emotional distress and racial discrimination.[1] The plaintiff alleged that the crew members aboard the vessel hung a noose in the ship's wheelhouse in an effort to threaten and intimidate him because of his race. The plaintiff further alleged that he asked the captain to remove the noose because it made him feel threatened, but the captain

---

[1] On November 25, 2009, the defendant removed this case to the United States District Court, Middle District of Louisiana, asserting that the plaintiff's petition stated a claim under federal employment discrimination laws, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981. Thereafter, the plaintiff filed a motion to remand the case to the Nineteenth Judicial District Court. It appears from the record that the plaintiff did not pursue the claims made in his petition for any employment-related damages for racial discrimination, hostile work environment, constructive discharge, or loss of benefits because of his race. Thus, from the record it appears that the plaintiff's only claims are based in maritime law.

refused to do so. The plaintiff also asserted that the M/V Norman Proehl was unseaworthy.

On September 28, 2010, the plaintiff amended his petition, asserting that "several Caucasian members of the crew hung a noose in the ship's wheelhouse in an effort to threaten and intimidate [the] [p]laintiff because of his race." The plaintiff asserted that, "[d]ue to the outrageous nature of [the] [d]efendant's actions, [the] [p]laintiff felt threatened with immediate physical injury and was in the zone of danger." As a result of the defendant's negligence and intentional acts, the plaintiff argued that he had a claim for intentional and negligent infliction of emotional distress under the "zone of danger" test and that he was entitled to damages pursuant to La. C.C. art. 2315.[2] Consequently, the plaintiff asserted that the M/V Norman Proehl was unseaworthy.

In response, the defendant filed a peremptory exception raising the objection of no cause of action. In its memorandum, the defendant argued that the plaintiff's amended petition for damages failed to state a cause of action under the Jones Act[3] for negligent and intentional infliction of emotional distress, harassment, or discrimination based upon the plaintiff's race. Additionally, the defendant argued that the plaintiff's new claim of negligence under La. C.C. art. 2315 in his amended petition for damages was preempted by the Jones Act and general

---

[2] Louisiana Civil Code article 2315 provides:

> A. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
>
> B. Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person. Damages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease. Damages shall include any sales taxes paid by the owner on the repair or replacement of the property damaged.

[3] The Jones Act allows an injured seaman to bring a negligence suit against his employer. See 46 U.S.C. § 30104, et seq.

3

maritime law, which provided the plaintiff his exclusive remedy. In a memorandum opposing the defendant's exception, the plaintiff argued that he sufficiently alleged a claim under the Jones Act for intentional and negligent infliction of emotional distress. On May 15, 2012, the trial court signed a judgment granting the defendant's peremptory exception raising the objection of no cause of action as to the plaintiff's claims under La. C.C. art. 2315 and denying the exception as to the plaintiff's claims under the Jones Act.

On January 3, 2018, the defendant filed a motion for summary judgment seeking the dismissal of the remainder of the plaintiff's claims. The defendant argued that, as a matter of law, the plaintiff could not prove the existence of a genuine issue of material fact as to his Jones Act and unseaworthiness claims because he did not satisfy the "zone of danger" test established by the United States Supreme Court. See **Consolidated Rail Corp. v. Gottshall**, 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994). Specifically, the defendant argued that the plaintiff's deposition testimony, which was attached to the defendant's memorandum, provided that the plaintiff did not have physical contact with the captain during the incident, that he suffered no physical injuries, and that he never felt physically threatened while aboard the vessel. Therefore, the defendant argued that summary judgment should be granted because the plaintiff could not satisfy the "zone of danger" test.

In opposition, the plaintiff argued that his deposition testimony demonstrated that there was a factual dispute as to whether he felt threatened and feared for his life. The plaintiff further argued that it was not necessary that he suffer "actual physical impact as long as he was threatened with immediate physical harm." Therefore, the plaintiff argued that the defendant's motion for summary judgment should be denied.

4

On April 9, 2018, the trial court held a hearing on the defendant's motion. After hearing arguments, the trial court made an oral ruling granting the defendant's motion for summary judgment and dismissing the plaintiff's claims with prejudice. A judgment in accordance with the trial court's ruling was signed on May 24, 2019.[4] From this judgment, the plaintiff appeals.

## STANDARD OF REVIEW

Appellate courts review the granting of summary judgment *de novo* using the same criteria governing the trial court's consideration of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3); **Turner v. Rabalais**, 2017-0741 (La. App. 1 Cir. 12/21/17), 240 So.3d 251, 255, writ denied, 2018-0123 (La. 3/9/18), 237 So.3d 1193.

The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. La. C.C.P. art. 966(A)(2). The purpose of a motion for summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. **Hines v. Garrett**, 2004-0806 (La. 6/25/04), 876 So.2d 764, 769 (*per curiam*). After an adequate opportunity for discovery, summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are

---

[4] On May 22, 2018, the trial court signed a judgment, granting summary judgment in favor of the defendant, which was appealed to this court. On April 12, 2019, this court dismissed the plaintiff's appeal because the May 22, 2018 judgment lacked the appropriate decretal language. See **Thompson v. Cenac Towing Co., L.L.C.**, 2018-1282 (La. App. 1 Cir. 4/12/19), 2019 WL 1578170, at *2 (unpublished). On May 24, 2019, the trial court signed a revised final judgment that is at issue in the instant matter.

5

pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4).

On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion, the mover's burden on the motion does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, after meeting its initial burden, the mover may point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, summary judgment shall be granted unless the adverse party can produce factual evidence sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider. La. C.C.P. art. 966(D)(2).

## APPLICABLE LAW

Admiralty claims may be brought in federal court pursuant to its admiralty jurisdiction or in state court under the savings to suitors clause. See 28 U.S.C. § 1333. In either case, federal substantive maritime law applies. **Graham v. Offshore Specialty Fabricators, Inc.**, 2009-0117 (La. App. 1 Cir. 1/8/10), 37 So.3d 1002, 1008.

6

The Jones Act allows an injured seaman to bring a negligence suit against his employer. 46 U.S.C. § 30104. The employer's potential liability extends to all personal injuries arising during the course of the seaman's employment, but proof of negligence is essential to recovery. **Foster v. Destin Trading Corp.**, 96-0803 (La. 5/30/97), 700 So.2d 199, 208. Such negligence may arise in many ways, including the failure to use reasonable care to provide a seaman with a safe place to work, the existence of a dangerous condition on or about the vessel, or any other breach of the duty of care. **Zentner v. Seacor Marine, Inc.**, 2006-2049 (La. App. 1 Cir. 10/24/07), 977 So.2d 962, 965. The duty of care owed by an employer under the Jones Act is that of ordinary prudence, namely, the duty to take reasonable care under the circumstances. **Foster**, 700 So.2d at 208. The seaman bears the evidentiary burden of proving that a breach of the duty owed by the employer was a cause of his injuries. **Id**. A seaman is obligated under the Jones Act to act with ordinary prudence under the circumstances. The circumstances of a seaman's employment include not only his reliance on his employer to provide a safe work environment but also his own experience, training, or education. The reasonable person standard in a Jones Act negligence action becomes that of the reasonable seaman in like circumstances. **Graham**, 37 So.3d at 1009-10.

## DISCUSSION

The plaintiff argues that the trial court "misapplied the legal standard by which [his] claims should be evaluated." Specifically, the plaintiff argues that the trial court erred in weighing evidence and making factual determinations concerning the plaintiff's subjective feelings to determine if he was in the zone of danger. Thus, the plaintiff argues that the trial court erred in dismissing his claims for negligent and intentional infliction of emotional distress under the Jones Act based solely upon a lack of physical impact or injury.

7

Generally, state courts exercising concurrent maritime jurisdiction are bound to apply substantive federal maritime statutory law and to follow United States Supreme Court maritime jurisprudence. **Trinh ex rel. Tran v. Dufrene Boats, Inc.**, 2008-0824 (La. App. 1 Cir. 1/22/09), 6 So.3d 830, 839, writs denied, 2009-0406 and 2009-0411 (La. 4/13/09), 5 So.3d 166, cert. denied, 558 U.S. 875, 130 S.Ct. 228, 175 L.Ed.2d 128 (2009). The United States Supreme Court held that an employee may recover damages based on negligence under the Federal Employer's Liability Act (FELA), 45 U.S.C. § 51, *et seq.*, for mental or emotional injuries only if the employee can show he was within a zone of danger of physical impact.[5] **Zentner**, 977 So.2d at 965, citing **Consolidated Rail Corp.**, 512 U.S. 532, 114 S.Ct. 2396. The "zone of danger" test adopted by the United States Supreme Court for actions brought pursuant to FELA, and extended to Jones Act claims, is described as follows:

> Under this test, a worker within the zone of danger of physical impact will be able to recover for emotional injury caused by fear of physical injury to himself, whereas a worker outside the zone will not. ... Whether an employee's claim satisfied the zone of danger test is a legal question. Further, the Supreme Court noted that, regarding injuries which constituted mental or emotional harm (such as fright or anxiety) that are caused by the negligence of another and that are not directly brought about by a physical injury, substantial limitation must be placed on the class of plaintiffs that may recover for emotional injuries and on the injuries that may be compensable.

**Zentner**, 977 So.2d at 965-66 (internal quotation marks and citations omitted.)

The "zone of danger" test is a less restrictive standard—it limits recovery to plaintiffs who either sustained a physical impact or are within the zone of danger of physical contact. **In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on April 20, 2010**, 2010-03261, 2012-1713, 2020 WL 638571, at *3

---

[5] The Jones Act incorporates and makes applicable to seaman the substantive recovery provisions of the FELA. See **Miles v. Apex Marine Corp.**, 498 U.S. 19, 32, 111 S.Ct. 317, 325, 112 L.Ed.2d 275 (1990).

8

(E.D. La. Feb. 11, 2020). The plaintiff must, objectively, be within a fact-particular zone of danger. **Id.**; see also **In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on April 20, 2010**, 2010-03261, ___ F.Supp.3d ____, 2020 WL 1702343, at *3 (E.D. La. Apr. 8, 2020). The plaintiff must also subjectively believe that he is in immediate risk of physical harm. **Id.** In certain circumstances, a plaintiff may recover for purely emotional harm under the zone of danger theory if the claimant was objectively within the zone of danger; claimant feared for his life at the time of the accident or person was in danger; and his emotional injuries were a reasonably foreseeable consequence of the defendant's alleged negligence. **Anselmi v. Penrod Drilling Corp.**, 813 F.Supp. 436, 441 (E.D. La. 1993). However, to recover for such mental anguish, an individual must show that he was involved in a hazardous situation, within the zone of danger, and that his fear was reasonable given the circumstances. See **McDonald v. Illinois Cent. Gulf R. Co.**, 546 So.2d 1287, 1292 (La. App. 1 Cir. 1989), writs denied, 551 So.2d 1340 (La. 1989). More than minimal inconvenience and worry must be shown before damages may be awarded. **Id.**

In this case, it is undisputed that the plaintiff sustained no actual physical injury or harm from seeing the noose in the wheelhouse or during his verbal confrontation with the captain. The plaintiff was also objectively within the zone of danger because he was on the tugboat where he was potentially exposed to physical injury or harm by the person or persons who hung the noose. Therefore, the plaintiff's claim for emotional damages under the "zone of danger" test against the defendant depends upon whether he felt threatened with imminent physical impact, and if so, did that threat place him in reasonable apprehension of physical harm. See **Consolidated Rail Corp.**, 512 U.S. at 556; 114 S.Ct. at 2411; **Zentner** 977 So.2d at 966. In other words, the plaintiff must have feared that his life was

9

endangered. See **Williams v. Treasure Chest Casino, L.L.C.**, 95-3968, 97-0947, 1998 WL 42586, at *7 (E.D. La. Feb. 3, 1998).

While deposition testimony may be used to support or oppose a motion for summary judgment, it may not be weighed. **Ray v. Rodmar Enterprises, Inc.**, 2003-1133 (La. App. 3 Cir. 3/17/04), 868 So.2d 311, 315. The credibility of a witness is a question of fact, thus, a trial court cannot make credibility determinations on a motion for summary judgment. See **The Shaw Group v. Kulick**, 2004-0697, 2004-0698 (La. App. 1 Cir. 4/8/05), 915 So.2d 796, 801, writ denied, 2005-1205 (La. 11/28/05), 916 So.2d 148. In this case, the only contested issue presented on summary judgment is whether there are any disputed facts or interpretation of facts wherein the plaintiff, an African-American worker, who began a 28-day hitch aboard a tugboat, would reasonably fear that he was threatened with imminent physical harm such that he reasonably feared for his life upon seeing a noose in the tugboat's wheelhouse at the beginning of his service. In his deposition, the plaintiff stated that the noose made him feel threatened for his life. Thus, the issue of whether an African-American plaintiff felt threatened for his life upon seeing the noose in the tugboat's wheelhouse is one that necessarily requires the court to make a credibility determination. The trial court should assess the plaintiff's credibility at a trial on the merits and not at summary judgment. See **Johnson v. Government Employees Ins. Co.**, 2005-476 (La. App. 3 Cir. 11/2/05), 916 So.2d 451, 454-55. Subjective facts such as knowledge, intent, fear, and emotional injuries that are personal to the party, and which require the trial court to make credibility determinations and weigh the evidence, are generally improper evidence upon which to grant summary judgment. See **Jones v. Estate of Santiago**, 2003-1424 (La. 4/14/04), 870 So.2d 1002, 1006; **Ackel v. Ackel**, 2005-2230 (La. App. 1 Cir. 6/20/07), 2007 WL 1765561, at *7 (unpublished).

10

Considering the unique facts of this case, it would be an improper use of summary judgment for this court, on *de novo* review, to attempt to determine the level of fear experienced by an African-American worker when seeing a noose on a tugboat upon which he would have to work for 28-days.

Accordingly, after a *de novo* review of the record, we find that the trial court improperly granted the defendant's motion for summary judgment because it weighed evidence of material fact as to the credibility of the witnesses. Given the testimony of the plaintiff as to fearing for his life or imminent physical harm, the trial court erred in finding that the plaintiff did not have a claim for intentional and negligent infliction of emotional distress under the Jones Act and in granting the motion for summary judgment in favor of the defendant. Therefore, we reverse the judgment of the trial court and remand this case for further proceedings.

## CONCLUSION

For the above reasons, we reverse the May 24, 2019 judgment in favor of the defendant, Cenac Towing Co., L.L.C., and against the plaintiff, Robert E. Thompson, dismissing all of his claims against Cenac Towing Co., L.L.C., with prejudice and remand to the trial court for further proceedings. Costs of this appeal are assessed against the defendant, Cenac Towing Co., L.L.C.

**REVERSED AND REMANDED.**

ROBERT E. THOMPSON

VERSUS

CENAC TOWING CO., L.L.C.

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019-CA-1185

**MCCLENDON, J., dissenting.**

The majority erroneously concludes that the plaintiff was "objectively within the zone of danger because he was on the tugboat where he was potentially exposed to physical injury or harm." I respectfully suggest that the majority ignores the requirement of immediacy in a zone of danger test. The Fifth Circuit in **In re Deepwater Horizon**, No. 20-30300, ___ Fed. Appx. ___, 2021 WL 96168, at *3 (5th Cir. 1/11/21) (per curiam) (unpublished), held for the plaintiff to objectively be within the zone of danger, he must be in the same location as the accident and face an immediate risk of harm. The plaintiffs in **Deepwater Horizon** argued they were "under constant threat of another massive explosion that would send debris towards them and their boat" when they were attempting to rescue people in the water; were "frequently forced to reverse their boat due to the overwhelming heat of the burning rig"; suffered burns on their faces and had their hair singed; and felt and heard deep rumbling sounds coming from deep below the surface of the water. **Id.** The plaintiffs also alleged their boat's powder coating "melted in places." **Id.** However, even in this situation, the Fifth Circuit concluded these allegations were insufficient to satisfy the zone of danger test.[1] **Id.**

**Ferguson v. CSX Transportation**, 36 F.Supp.2d 253 (E.D. Pa. 1999), aff'd, 208 F.3d 205 (3d Cir. 2000), further exemplifies the requirement that the risk of

---

[1] We also note that the Fifth Circuit has left open the question of whether a zone-of-danger negligent infliction of emotional distress claim presents a recoverable injury. See **Deepwater Horizon**, 2021 WL 96168, at *3; **Barker v. Hercules Offshore, Inc.**, 713 F.3d 208, 224 (5th Cir. 2013).

harm or impact must be immediate in order for the plaintiff to fall within the zone of danger. The **Ferguson** court found that an employee was not within the zone of danger of physical impact when a co-employee made verbal and physical threats, including threats to kill him and burn down his house. The court stated that "the fear of some future harm caused by verbal threats is insufficient to place plaintiff within the actionable zone of danger because these threats of future harm did not place plaintiff 'in immediate risk of physical harm or threatened [him] imminently with physical impact.'" **Id.** at 256. See also **Barker v. Hercules Offshore, Inc.,** 713 F.3d 208, 224 (5th Cir. 2013) (holding that the plaintiff was not within the zone of danger because he was two feet away from the opening in the drill floor, which was where the accident occurred, and had testified that he was "out of the dangerous position where something could have happened"); **Plaisance v. Texaco, Inc.,** 966 F.2d 166, 167-68 (5th Cir. 1992) (en banc) (holding the same when the plaintiff "did not personally participate in fighting the fire" and "the fire did not spread" to other parts of the boat and thus did not put the plaintiff in any danger); **Ainsworth v. Penrod Drilling Corp.,** 972 F.2d 546, 548 (5th Cir. 1992) (per curiam) (holding the same when the plaintiff was "approximately one hundred feet away from" the crash and admitted that he knew the crashed helicopter would not fall into the room he was in); **Zentner v. Seacor Marine, Inc.,** 2006-2049 (La. App. 1 Cir. 10/24/07), 977 So. 2d 962, 967 (affirming grant of defendant's summary judgment where the evidence did not demonstrate that verbal confrontations between the parties placed the plaintiff in reasonable apprehension of physical harm so as to satisfy the zone of danger test).

The Supreme Court explicitly acknowledged that the zone of danger test will inevitably preclude some genuine emotional injuries. See **Consolidated Rail Corp. v. Gottshall,** 512 U.S. 532, 557 114 S.Ct. 2396, 2411, 129 L.Ed.2d 427 (1994). It appears that the plaintiff may fall into this category. The plaintiff herein failed to

2

produce factual evidence sufficient to establish the existence of a genuine issue of material fact or that the defendant is not entitled to judgment as a matter of law. While the plaintiff may have subjectively believed he was in immediate risk of physical harm, the jurisprudence does not support a finding that he was objectively within a fact-particular and immediate zone of danger.[2] For that reason, I would affirm the decision of the trial court.

---

[2] In **Bennett v. CSX Transportation, Inc.**, 2011 WL 13237597 (E.D.N.C. Dec. 23, 2011), threats and racial slurs were spray-painted on the plaintiff's vehicle while she was at work. Her rear passenger window was shattered, and a mannequin head was discovered in her backseat with its face painted black and a noose tied around its neck. The **Bennett** court found that the plaintiff "alleged facts sufficient to survive a motion for summary judgment" on her presence in the zone of danger in the aftermath of the vandalism. **Id.** at *4. However, I find **Bennett** to be distinguishable and therefore not instructive, as the facts in that case presented a greater sense of urgency and objectively indicated an immediate risk of physical harm to the plaintiff.